UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA PORRICELLI, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br>　　vs.<br><br>MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING, LLC, and ENCORE CAPITAL GROUP, INC., formerly MCM CAPITAL GROUP, INC.,<br><br>　　　　　　　　Defendants. | CIVIL ACTION<br><br>NO. 19-CV-7992 |

**CLASS ACTION COMPLAINT**

## I.   INTRODUCTION

　　1.　　This is a class action for damages brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*

　　2.　　The FDCPA prohibits debt collectors from engaging in any false, deceptive, or misleading practices in the collection of any debt. 15 U.S.C. § 1692e.

　　3.　　Defendants—both debt collectors—sent Plaintiff and the putative class members a collection letter bearing the ominous threat that it would be the "FINAL NOTICE" before the account would be transitioned to the "attorney review process[.]"

　　4.　　But Defendants continued to send multiple collection notices to Plaintiff and the putative class members after this purported "FINAL NOTICE."

1

5. Defendants' "FINAL NOTICE" collection letters contain language that is false, deceptive, and misleading, in violation of the FDCPA.

## II. JURISDICTION

6. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692k, and 28 U.S.C. §§1331 and 1337.

7. This court has jurisdiction over Defendants because they regularly do, conduct, and transact business in this state, and the conduct complained of occurred in this District,

## III. PARTIES

8. Plaintiff Lisa Porricelli is a consumer who resides in The Bronx, New York.

9. Defendant Midland Credit Management, Inc. ("MCM") is a nationwide debt collector with its principal place of business at 8875 Aero Drive, San Diego, California.

10. Defendant Midland Funding, LLC ("Midland Funding") is a purchaser of charged-off consumer debts and has its principal place of business at 8875 Aero Drive, San Diego, California.

11. MCM and Midland Funding LLC are under common ownership. Both are wholly owned subsidiaries of Encore, a publicly traded Delaware corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, CA 92123.

12. Encore has stated in its filings with the Securities & Exchange Commission, "We are a leader in consumer debt management and recovery

solutions... We purchase portfolios of defaulted consumer receivables at deep discounts to face value and use a variety of operational channels to maximize our collections from these portfolios." <u>Exhibit A</u>, Form 10-K filed by Encore with the SEC for year ending Dec. 31, 2012, original page 1. (Since complete copies of documents filed with the Securities and Exchange Commission are available through the SEC's "EDGAR" database, which can be found at https://www.sec.gov/edgar.shtml, to save space, for this SEC filings, only the cover pages and the cited pages are attached.)

13. Encore (a) secures funds from investors and lenders for the purpose of purchasing the debts to which MF takes title, (b) devises the collection strategies used by the other Defendants, and (c) participated in the debt collection activities complained of.

14. Encore is a "purchaser and manager of charged-off consumer receivables portfolios" – i.e., bad consumer debts. <u>Exhibit B</u>, form 8-K filed by Encore with the SEC on March 3, 2005, including Exhibit 99.1 thereto.

15. Encore "acquires these portfolios at deep discounts from their face values." A June 9, 2011 filing with the SEC (Form 8-K, Exhibit 99.1) reflecting a presentation at an "Investor Day" by Brandon Black, President and Chief Executive Officer, Paul Grinberg, EVP and Chief Financial Officer, Amy Anuk vice president for Business Development and Manu Rikhye, Managing Director of India Operations, stated that Encore had invested $1.9 billion to acquire receivables with

a face value of $58 billion since its inception, or about 3.3 cents on the dollar, and had acquired 34 million consumer accounts since its inception. *See* Exhibit C.

16.     The same document states that in 2011 collections from lawsuits resulted in revenue of $266.8 million in 2010 and $88.5 million during the first quarter of 2011.

17.     During 2010, total collections by Encore amounted to $604.6 million (Exhibit D, Form 10-K for year ending Dec, 31, 2010, original page 25). Encore devises the "collection strategies" used by its subsidiaries. This is demonstrated by the documents Encore files with the Securities and Exchange Commission.

18.     Encore states in the form 10-K it filed with the SEC that, "Leveraging an industry-leading distressed consumer database, our in-house team of statisticians, business analysts, and software programmers have developed, and continually enhance, proprietary behavior and valuation models, custom software applications, and other business tools that guide our portfolio purchases. Moreover, our collection channels are informed by powerful statistical models specific to each collection activity, and each year we deploy significant capital to purchase credit bureau and customized consumer data that describe demographic, account level, and macroeconomic factors related to credit, savings, and payment behavior." Encore form K-10 for the year ending December 31, 2012, at 4.

19.     Through "its subsidiaries, Encore Capital Group purchases portfolios of consumer receivables from major banks, credit unions, and utility providers, and

partners with individuals as they repay their obligations and work toward financial recovery." March 6, 2013 filing with the SEC (Form 8K, Exhibit 99.1).

20. Encore has a direct role in developing and controlling the collection strategies it executes under the names of Midland Funding and MCM.

21. Encore is responsible for determining what debts to purchase and at what price.

22. Defendants MCM, Midland Funding, and Encore are collectively referred to as "Midland" or "Defendants."

23. Defendants regularly engage in the collection of consumer debts using the mails, telephone, and litigation, or purchase consumer debt after default for the purposes of collection.

24. Defendant MCM uses instrumentalities of interstate commerce and the mails in pursuit of its business, the principal purpose of which is the collection of debts.

25. Defendant Midland Funding uses instrumentalities of interstate commerce and the mails in pursuit of its business, the principal purpose of which is the collection of debts.

26. Defendant Encore uses instrumentalities of interstate commerce and the mails in pursuit of its business, the principal purpose of which is the collection of debts.

27. Each Defendant is a "debt collector" as that term is contemplated in the FDCPA, 15 U.S.C. § 1692a(6).

28.     Midland Funding and Encore engaged MCM to collect the accounts here in issue.

29.     Midland Funding and Encore are responsible for the acts of their collector, MCM.

## IV.   STATEMENT OF CLAIM

30.     On September 14, 2018, Defendant MCM sent Plaintiff a communication in connection with a consumer debt allegedly due to Midland Funding regarding a Synchrony Bank account. (<u>Exhibit E</u>, Collection Notice).

31.     The September 2018 Collection Notice displays the conspicuous title "PRE-LEGAL NOTIFICATION" and contains the ominous threat—in red, all-caps font—that this notice would be the "FINAL NOTICE":



<u>Exhibit E</u>.

32.     The body of the September 2018 Collection Notice threatens that the account would be sent to an attorney for review, stating: "After numerous attempts to contact you regarding this account, Midland Credit Management, Inc. (MCM) will transition your account into the attorney review process after <u>**10-09-2018**</u>. . . . This is the final written communication you will receive prior to entering the legal review process." (<u>Exhibit E</u>, emphasis in original).

33.     However, the September 2018 Collection Notice was *not* the "FINAL NOTICE." After October 9, 2018, Defendant MCM sent no less than *three* collection notices to Plaintiff, dated November 14, 2018, December, 27, 2018, and February 6, 2019. Exhibit F.  These subsequent collection notices did not mention anything about an attorney review process, and were signed by the same individual at MCM who signed the September 2018 Collection Notice.

34.     At the time of sending the September 2018 "Final Notice" Defendants did not intend that communication to be the final notice.  Rather, it was a collection ploy.

35.     Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

36.     The September 2018 Collection Notice attached as Exhibit E contains language which is false, deceptive, and misleading under the circumstances.

37.     The September 2018 Collection Notice attached as Exhibit E was designed by Defendants for the purpose of increasing the possibility of collection.

## CLASS ALLEGATIONS

38.     Plaintiff brings this action on her own behalf and on behalf of a Class designated pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

39.     Plaintiff proposes to define the Class as follows:

    a.  All persons with addresses within the State of New York;

    b. who were sent a collection letter from Defendant MCM on behalf of Defendant Midland Funding or Defendant Encore;

    c. attempting to collect a consumer debt alleged due in connection with a Synchrony Bank account;

    d. which stated in red, all-caps font that it would be the "FINAL NOTICE";

    e. where the letter bears a send date that falls between September 14, 2018 and the date of the filing of this complaint.

    f. where MCM subsequently sent another collection letter to that person.

40. The Class is believed to be so numerous that joinder of all members is impractical. This Complaint concerns mass-produced form collection letters.

41. There are questions of law or fact common to the Class. These include:

    a. Whether Defendants' form letter violates the Fair Debt Collection Practices Act by including false, deceptive, and/or misleading information;

    b. Whether and what amount of statutory damages are recoverable class-wide by Plaintiff and the Class for Defendants' violation.

42. Plaintiff's claims are typical of the claims of the Class. Plaintiff and all Class Members were mailed the collection letter for an alleged Synchrony Bank debt with the same deceptive language. All claims are based on the same factual

and legal theories, and there are no individualized issues. The standard for falsity and for deception is fairly standardized.

43. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to those of the Class and Plaintiff's counsel is competent and experienced in consumer credit cases and class actions.

44. The questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class Members are consumer debtors, who may be unable to locate or afford to hire lawyers. Most are probably unaware that their rights, and the FDCPA, have been violated.

45. The Class may be certified under Fed. R. Civ. P. 23(b)(3), as such represents a superior method for the fair and efficient adjudication of this controversy in that:

      a. Congress specifically contemplated FDCPA class actions as a principal means of enforcing the statute by private attorneys general. 15 U.S.C. § 1692k.

      b. The interest of Class Members in individually controlling the prosecution of separate claims against debt collectors is small because the maximum statutory damages available in an individual action under the Act is $1,000.00.

      c.    This class action covering consumers within the geographic boundaries of the Bronx is likely to be easily manageable.

## COUNT I

## FAIR DEBT COLLECTION PRACTICES ACT

46. Plaintiff repeats the allegations set forth above as if the same were set forth at length herein.

47. Defendants violated the FDCPA by sending collection letters to Plaintiff and the Class which contains language that is false, deceptive, and misleading 15 U.S.C. § 1692e.

**WHEREFORE**, Plaintiff Lisa Porricelli, on behalf of herself and all other similarly situated, demands judgment against Defendants Midland Credit Management, Inc. and Midland Funding, LLC for:

    (a)    Damages;

    (b)    Attorney's fees and costs; and

    (c)    Such other and further relief as the Court shall deem just and proper.

## V. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

Date: August 27, 2019

                                    Respectfully submitted:

                                    /s/ Brian L. Bromberg
                                    Brian L. Bromberg

Attorneys for Plaintiff

BRIAN L. BROMBERG
**BROMBERG LAW OFFICE, P.C.**
26 Broadway, 27th Floor
New York, NY 10004
(212) 248-7906

CARY L. FLITTER
ANDREW M. MILZ
JODY LOPEZ-JACOBS
**FLITTER MILZ, PC**
450 N. Narberth Avenue, Suite 101
Narberth, PA  19072
(610) 822-0782

*Attorneys for Plaintiff and the Class*

11